UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | |
|---|---|
| RYAN B., § § § Plaintiff, § § v. § COMMISSIONER OF SOCIAL SECURITY, § § Defendant. § | Case # 1:20-cv-1607-DB MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

Plaintiff Ryan B. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied his application for Disability Insurance Benefits ("DIB") under Title II of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 16).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 10, 12. Plaintiff also filed a reply brief. *See* ECF No. 13. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 10) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 12) is **GRANTED**.

## BACKGROUND

Plaintiff protectively filed an application for DIB on April 25, 2018, alleging disability beginning October 1, 2017 (the disability onset date), due to various musculoskeletal and mental health impairments. Transcript ("Tr.") 21, 164-70, 191. Plaintiff's claim was denied initially on

July 5, 2018, after which he requested an administrative hearing. Tr. 21. On November 12, 2019, Administrative Law Judge David Neumann ("the ALJ") conducted a video hearing from Albany, New York. Tr. 21, 35-55. Plaintiff appeared and testified in Buffalo, New York, and was represented by Paul M. Pochepan, an attorney. Tr. 21. Susan L. Moyes, an impartial vocational expert ("VE"), also appeared and testified at the hearing. Tr. 35.

The ALJ issued an unfavorable decision on December 3, 2019, finding that Plaintiff was not disabled. Tr. 21-31. Thereafter, Plaintiff submitted a Medical Source Statement from Gregory Bennett, M.D. ("Dr. Bennett"), dated January 23, 2020 (Tr. 7-12), which the Appeals Council found did not show a reasonable probability that it would change the outcome of the decision and therefore, did not exhibit this evidence. Tr. 2. On September 17, 2020, the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. The ALJ's December 3, 2019 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

## II.    The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the

Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his December 3, 2019 decision:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2022.

2. The claimant has not engaged in substantial gainful activity since October 1, 2017, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine; depression/anxiety disorders (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. The claimant has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 CFR 404.1567(a)[1] except as restricted by the following: the claimant can lift/carry up to 10 pounds occasionally and 5 pounds or less frequently, and can push/pull within those restrictions; he can stand/walk for up to 2 hours and sit for up to 6 hours in an 8-hour day; he is limited to occasional climbing of stairs/ramps, balancing, stooping, kneeling, crouching and crawling; he is limited to occasional interaction with supervisors, coworkers and the public.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on July 27, 1983 and was 34 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563).

---

[1] "Sedentary" work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 1, 2017, through the date of this decision (20 CFR 404.1520(g)).

Tr. 21-31.

Accordingly, the ALJ determined that, based on the application for a period of disability and disability insurance benefits filed on April 25, 2018, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act. Tr. 31.

## **ANALYSIS**

Plaintiff asserts two points of error. First, Plaintiff argues that the Appeals Council improperly rejected an opinion issued by treating physician Dr. Bennett after the date of the ALJ's decision. *See* ECF No. 10-1 at 1, 10-12. Next, Plaintiff argues that the ALJ's RFC finding was not supported by substantial evidence because the ALJ did not rely on any medical opinion, and therefore, the RFC was crafted from the ALJ's own lay interpretation of the medical record. *See id*. at 12-18. In response, the Commissioner argues that the Appeals Council correctly determined that Dr. Bennett's opinion did not show a reasonable probability that it would change the outcome of the ALJ's decision. *See* ECF No. 12-1 at 4-10. The Commissioner further argues that Dr. Bennett's check-box opinion provided very little explanation or supportive text; it contained evidence that was cumulative of other evidence already in the record; and it was inconsistent with other evidence in the record, including Dr. Bennett's own treatment notes. *See id*.

5

With respect to Plaintiff's second point of error, the Commissioner argues that the ALJ properly considered all the evidence in arriving at the RFC, and substantial evidence supports that finding. *See id*. at 10-16. Further, argues the Commissioner, the ALJ was not required to rely on a medical opinion that matched the RFC finding, as Plaintiff argues, because the ALJ, not a medical source, assesses RFC based on all the evidence, not just the medical opinion evidence. *See id*

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review, the Court finds that the ALJ's decision was supported by substantial evidence, including the opinion evidence, Plaintiff's improvement after undergoing surgery, and treatment records showing fairly modest physical examination findings. Thus, the ALJ considered the record as a whole and reasonably determined that Plaintiff was capable of performing sedentary work with additional limitations. Accordingly, the Court finds no error.

A claimant's RFC is the most he can still do despite his limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. §

416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Additionally, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, an ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d at 588. Indeed, an ALJ may formulate an RFC absent any medical opinions. "Where, [] the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted).

Moreover, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017)

(The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.).

Effective for claims filed on or after March 27, 2017, the Social Security Agency comprehensively revised its regulations governing medical opinion evidence creating a new regulatory framework. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15, 132-01 (March 27, 2017). Here, Plaintiff filed his claim on April 25, 2018, and therefore, the 2017 regulations are applicable to his claim.

First, the new regulations change how ALJs consider medical opinions and prior administrative findings. The new regulations no longer use the term "treating source" and no longer make medical opinions from treating sources eligible for controlling weight. Rather, the new regulations instruct that, for claims filed on or after March 27, 2017, an ALJ cannot "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a) (2017).

Second, instead of assigning weight to medical opinions, as was required under the prior regulations, under the new rubric, the ALJ considers the persuasiveness of a medical opinion (or a prior administrative medical finding). *Id*. The source of the opinion is not the most important factor in evaluating its persuasive value. 20 C.F.R. § 416.920c(b)(2). Rather, the most important factors are supportability and consistency. *Id*.

Third, not only do the new regulations alter the definition of a medical opinion and the way medical opinions are considered, but they also alter the way the ALJ discusses them in the text of the decision. 20 C.F.R. § 416.920c(b)(2). After considering the relevant factors, the ALJ is not

required to explain how he or she considered each factor. *Id*. Instead, when articulating his or her finding about whether an opinion is persuasive, the ALJ need only explain how he or she considered the "most important factors" of supportability and consistency. *Id*. Further, where a medical source provides multiple medical opinions, the ALJ need not address every medical opinion from the same source; rather, the ALJ need only provide a "single analysis." *Id*.

Fourth, the regulations governing claims filed on or after March 27, 2017 deem decisions by other governmental agencies and nongovernmental entities, disability examiner findings, and statements on issues reserved to the Commissioner (such as statements that a claimant is or is not disabled) as evidence that "is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled." 20 C.F.R. § 416.920b(c)(1)-(3) (2017). The regulations also make clear that, for claims filed on or after March 27, 2017, "we will not provide any analysis about how we considered such evidence in our determination or decision" 20 C.F.R. § 416.920b(c).

Finally, Congress granted the Commissioner exceptionally broad rulemaking authority under the Act to promulgate rules and regulations "necessary or appropriate to carry out" the relevant statutory provisions and "to regulate and provide for the nature and extent of the proofs and evidence" required to establish the right to benefits under the Act. 42 U.S.C. § 405(a); *see also* 42 U.S.C. § 1383(d)(1) (making the provisions of 42 U.S.C. § 405(a) applicable to title XVI); 42 U.S.C. § 902(a)(5) ("The Commissioner may prescribe such rules and regulations as the Commissioner determines necessary or appropriate to carry out the functions of the Administration."); *Barnhart v. Walton*, 535 U.S. 212. 217-25 (2002) (deferring to the Commissioner's "considerable authority" to interpret the Act); *Heckler v. Campbell*, 461 U.S. 458, 466 (1983). Judicial review of regulations promulgated pursuant to 42 U.S.C. § 405(a) is narrow and limited to determining whether they are arbitrary, capricious, or in excess of the

Commissioner's authority. *Brown v. Yuckert*, 482 U.S. 137, 145 (1987) (citing *Heckler v. Campbell*, 461 U.S. at 466).

The Court will first address Plaintiff's argument that the Appeals Council erred by declining to consider post-decision evidence submitted by Plaintiff. *See* ECF No.12-1 at 10-12. The regulations expressly authorize claimants to submit new and material evidence[2] to the Appeals Council without a "good cause" requirement, as long as it relates to the period on or before the ALJ's decision. *Id*. (citing § 404.970(b) and § 416.1470(b)). The Appeals Council evaluates the entire record, including any new and material evidence submitted if it is chronologically relevant, to determine if the ALJ's action, findings, or conclusion is contrary to the weight of the evidence currently of record. *See* 20 C.F.R. § 404.970(b); *Bushey v. Colvin*, 552 F. App'x 97, 98 (2d Cir. 2014). When the Appeals Council denies review, however, regardless of whether a claimant presents additional evidence or only argument, it is the ALJ's decision that becomes the final decision of the Commissioner subject to judicial review. *See* 20 C.F.R. § 404.981; *see also Pollard v. Halter*, 377 F.3d 183, 192 (2d Cir. 2004) (comparing an Appeals Council's denial of a request for review to a denial of certiorari which carries no import as to the merits of a case).

Accordingly, when the Appeals Council denies review, this Court must review the ALJ's decision in the context of the entire administrative record, including any new evidence, to determine if the ALJ's decision is supported by substantial evidence, rather than review the Appeals Council's denial. *See Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015). The relevant inquiry is not whether the Appeals Council properly determined whether the evidence was new

---

[2] Evidence is "new" when it has not been considered previously in the administrative process. *See Ovitt v. Colvin*, 2014 WL 1806995, *3 (N.D.N.Y. May 7, 2014). New evidence is "material" where it is both relevant to the plaintiff's condition during the relevant time period, and probative. *Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004). "The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently." *Id*.

and material, but whether the ALJ's decision is supported by substantial evidence in light of the additional information submitted to the Appeals Council. *Id*. In other words, a reviewing court must determine whether the submitted evidence "add[s] so much as to make the ALJ's decision contrary to the weight of the evidence." *Rutkowski v. Astrue*, 368 F. App'x 226, 229 (2d Cir. 2010); *see Bushey*, 552 F. App'x at 98 (noting that new evidence "did not alter the weight of evidence so dramatically as to require the Appeals Council to take the case").

The Court has reviewed the entire record, including the additional evidence, and finds that the Appeals Council did not err by refusing to review the ALJ's decision in light of the new evidence, as the new evidence presented did not shed any light on Plaintiff's condition during the relevant period. Thus, the Appeals Council correctly determined that the evidence did not show a reasonable probability that it would change the outcome of the decision. Tr. 2. *See Robert R. v. Saul*, 1:17-cv-1140, 2019 WL 4183569, at *7 (W.D.N.Y. Sept. 4, 2019) ("[M]ateriality requires . . . a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide [the] claimant's application differently.") (quoting *Lisa v. Sec'y of Dep't of Health & Human Servs*. of U.S., 940 F.2d 40, 43 (2d Cir. 1991) (citations omitted)); *Mulrain v. Comm'r of Soc. Sec.*, No. 10–2119–cv, 2011 WL 2516068, at *39 (W.D.N.Y. June 24, 2011) (Later-submitted evidence is not material if it does not suggest that, during the relevant period, a claimant's "condition was more serious than previously thought.").

First, the the later-submitted evidence is cumulative of other evidence in the record that was before the ALJ. Dr. Bennett stated that Plaintiff could sit for two hours per day, stand and walk for one hour at a time, needed lengthy rest breaks, and could lift up to five pounds. Tr. 7-9. The ALJ had already considered such claims and found that Plaintiff was able to perform a restricted range of sedentary work. For instance, Plaintiff testified that he was in "severe pain all

the time." Tr. 42. Due to that pain, he could sit for "two hours max" before needing to lie down for the rest of the night. Tr. 42-43. He alleged his ability to stand was approximately the same—stating he could stand for an "hour-ish" before he was "done." Tr. 43. He alleged he could walk under one hour, before needing to sit down for 30 minutes to an hour. Tr. 45. Plaintiff stated that he could lift "nothing." Tr. 45. Thus, the ALJ was fully aware that Plaintiff alleged a less than sedentary RFC. As the ALJ observed, Plaintiff claimed that he was essentially bedridden and unable to sustain even non-strenuous activity for long periods. Tr. 28. Thus, Dr. Bennett's opinion adds little of note which the ALJ had not already considered.

As the ALJ noted, however, there was evidence in the record that supported a greater level of ability. For example, after undergoing surgery, Plaintiff improved clinically, with intact strength and sensation, a normal gait, and his foot drop had resolved. Tr. 26, 295. During an August 2018 examination, Plaintiff reported ongoing pain but exhibited intact strength, sensation and gait. Tr. 27, 448. Another examination revealed some deficits, but Plaintiff reported that his pain was "mostly well controlled," with no apparent strength or neurological deficits. Tr. 27, 928-29. The ALJ noted several similar visits with Alfredo Rodes, M.D. ("Dr. Rodes"), and other providers throughout 2018 and 2019, in which Plaintiff had some positive findings such as a limp or positive straight leg raise ("SLR") testing, but also a lack of deficits in strength or neurological function. Tr. 27, 643-44, 663, 697-701, 732-33, 782, 804, 837, 847, 892, 911-12, 973-74. As late as August 2019, Plaintiff reported his pain was "mostly well controlled," and he had a normal gait. Tr. 27, 604-05.

The ALJ also considered the examination and assessment of Douglas Moreland M.D. ("Dr. Moreland"). who Plaintiff had seen on April 18, 2019 for a second opinion regarding back pain, bilateral leg pain, numbness, and tingling. Tr. 27, 517-18. Dr. Moreland noted that Plaintiff's

reported symptoms exceeded what could be corroborated objectively, and observed a pale, ashen skin appearance consistent opioid abuse. Tr. 27, 517-18. Dr. Moreland further noted that Plaintiff was "just seeking Social Security Disability which I cannot endorse." Tr. 518. Thus, Plaintiff's reported level of pain was inconsistent with Dr. Moreland's objective findings. *Id*.

The ALJ also considered the prior administrative finding of state agency reviewing physician J. Lawrence ("Dr. Lawrence"), who opined on July 2, 2018 that Plaintiff could perform at the level of light work. Tr. 29, 63-67. All of the above evidence of record was already before the ALJ and provides ample reason to support the Appeals Council's determination that Dr. Bennett's opinion did not show a reasonable probability that it would have altered the ALJ's decision.

As an initial matter, Dr. Bennett's opinion was provided on a check-box form with very little explanation or supportive text. *See* Tr. 7-11. As this Court has noted previously, such "check-box" forms are of limited evidentiary value. *See, e.g., Koerber v. Comm'r of Soc. Sec.*, No. 6:19-CV-1070-DB, 2020 WL 1915294, at *1 (W.D.N.Y. Apr. 20, 2020) (citing *Augustine v. Comm'r of Soc. Sec.*, No. 6:15-CV-06145-EAW, 2016 WL 5462836, at *1 (W.D.N.Y. Sept. 28, 2016); *see also Halloran*, 362 F.3d at 31 n.2 ("[t]he standardized form . . . is only marginally useful for purposes of creating a meaningful and reviewable factual record"); *Slattery v. Colvin*, 111 F. Supp. 3d 360, 372-73 (W.D.N.Y. 2015) ("of limited evidentiary value") (citing *Gray v. Astrue*, No. 09-CV-00584 (MAT), 2011 WL 2516496, at *5 (W.D.N.Y. June 23, 2011)); *Camille v. Colvin*, 652 F. App'x 25 (2d Cir. 2016); *see also* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion."). Having provided little supporting information on the form, Dr. Bennett's opinion is of marginal evidentiary value, which provides additional support for the Appeals Council's

13

determination that the opinion did not show a reasonable probability that it would have changed the outcome of the ALJ's decision.

In addition, despite purporting to relate the opinion back to September 2017 (Tr. 11), in May 2019, Dr. Bennett stated that Plaintiff's pain had developed approximately one year before, roughly May 2018. Tr. 514. Another later note from September 2019 states that Plaintiff's pain began approximately 18 months before, *i.e.*, March 2018. Tr. 961. Furthermore, the May 2019 treatment note appears to be the first time Dr. Bennett treated Plaintiff. Tr. 514. Thus, it is unclear how Dr. Bennett could have assessed Plaintiff's condition in September 2017.

Furthermore, Dr. Bennett's opinion is inconsistent with his own treatment notes. At that May 2019 visit, Plaintiff had a diminished range of motion of the spine, but normal motor examination, a normal gait, and he could stand and walk without difficulty. Tr. 515-16. In two other visits later that month, Dr. Bennett noted "diminished" spinal range of motion, but he also assessed that Plaintiff was in no acute distress with normal strength. Tr. 697, 965. In September 2019, Dr. Bennett similarly noted that Plaintiff was in no acute distress with normal strength. Tr. 962-63. Such mild findings are inconsistent with the later-submitted opinion that states that Plaintiff is essentially bedridden. Tr. 7-9. Where a doctor's medical source statement conflicts with his treatment notes, the ALJ is justified in not according controlling weight to the doctor's statement. *See Cichocki v. Astrue*, 534 F.3d. 71, 76 (2d Cir. 2013) (summary order); *Stanton v. Astrue*, 370 F. App' x 231 (2d Cir. 2010) (summary order) (ALJ reasonably gave reduced weight to treating physician opinion that conflicted with the physician's own notes); *see also* 20 C.F.R. § 404.1520c(c)(2) (consistency with the evidence is a relevant factor).

As noted above, Plaintiff has the burden of proving that evidence issued after the ALJ's hearing decision relates back to the relevant period. *See Wilbon v. Colvin*, No. 15-CV-756-FPG,

2016 WL 5402702, at *1 (W.D.N.Y. Sept. 28, 2016) (plaintiff has the burden of establishing new medical evidence, generated after the ALJ's decision, is relevant to the period in which Plaintiff must establish disability if such relevance is not apparent from the face of the newly submitted evidence). In this case, Plaintiff failed to meet his burden to show that the later-submitted evidence was material.

Plaintiff's argument that the Appeals Council's finding amounted to a "cursory rejection" of this post-decision evidence is also without merit. *See* ECF No. 10-1 at 12. As noted above, the Commissioner's regulations do not require the Appeals Council to provide an elaborate explanation when it evaluates additional evidence presented. *See* 20 C.F.R. § 416.1567 (only requires that the Appeals Council notify the party of its action); 20 C.F.R. § 416.1570 (does not mention any information that must be in the denial notice). As explained above, the Appeals Council's denial of a request for review does not amount to consideration on the merits, but rather, it is analogous to denial of *certiorari*. *Pollard*, 377 F.3d at 192; *see also Martinez v. Astrue*, 389 F. App'x 866, 869 (10th Cir. 2010) (declining to remand the case for a more thorough explanation by the Appeals Council, electing to take the Appeals Council at its word that it has considered a matter) (citations omitted). Therefore, the Appeals Council was not required to specify why it found that the additional evidence from Dr. Bennett did not show a reasonable probability that it would change the outcome of the ALJ's decision. Accordingly, Plaintiff's argument fails.

The Court next turns to Plaintiff's argument that the ALJ erred in formulating Plaintiff's RFC because there was not a medical opinion that matched that RFC finding. *See* ECF No. 10-1 at 12-18. Plaintiff alleges that because the ALJ did not adopt either Dr. Rodes' assessment that Plaintiff was "disabled" or Dr. Lawrence's assessment of light work, the RFC is necessarily the result of the ALJ's "lay interpretation of the medical record." *See id*. at 14. Plaintiff further argues

that in the absence of such an opinion, the ALJ cannot assess the medical evidence and arrive at the RFC finding. *See id*. Contrary to Plaintiff's argument, the ALJ properly considered all the evidence in arriving at the RFC, and substantial evidence supports that finding. Furthermore, the ALJ was not required to rely on an opinion that mirrored the RFC, as Plaintiff argues. *See id*.

Plaintiff's argument wrongly presumes that RFCs are medical determinations, and thus, outside the ALJ's expertise. As explained above, RFC is an administrative finding, not a medical one. Ultimately, an ALJ is tasked with weighing the evidence in the record and reaching an RFC finding based on the record as a whole. *See Tricarico v. Colvin*, 681 F. App'x 98, 101 (2d Cir. 2017) (citing *Matta*, 508 F. App'x at 56) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."). The regulations explicitly state that the issue of RFC is "reserved to the Commissioner" because it is an "administrative finding that [is] dispositive of the case." 20 C.F.R. §§ 404.1527(d), 416.927(d). Moreover, there is no requirement that an ALJ's RFC finding be based on a medical opinion at all. *See, e.g.*, *Corbiere v. Berryhill*, 760 F. App'x 54, 56-57 (2d Cir. 2019) (summary order) (affirming ALJ's physical RFC assessment based on objective medical evidence); *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8-9 (2d Cir. 2017) (summary order) (affirming where ALJ rejected sole medical opinion in record speaking to mental).

First, the ALJ correctly found Dr. Rodes' statements that Plaintiff was disabled "not persuasive." Tr. 29. In two separate statements, Dr. Rodes opined that Plaintiff was "temporarily totally disabled" for the period of August 2019 to August 2020 (Tr. 493, 653); and then "permanently totally disabled" (Tr. 775). As the ALJ noted, these "conclusory" opinions, "presumably for workers compensation purposes," provided no specific work-related limitations,

and furthermore, related to an issue reserved to the Commissioner. Tr. 29. As noted above, statements on issues reserved to the Commissioner (such as statements that a claimant is or is not disabled) is deemed evidence that "is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled." 20 C.F.R. § 416.920b(c)(1)-(3) (2017). The regulations also make clear that, for claims filed on or after March 27, 2017, "we will not provide any analysis about how we considered such evidence in our determination or decision" 20 C.F.R. § 416.920b(c). Thus, Dr. Rodes' statements were not even medical opinions. Moreover, the ALJ reasonably found these statements unsupported by, and inconsistent with, the record, which indicated improvement after surgery, "mostly well-controlled" pain (according to Dr. Rodes' own records), and no indication of serious strength or neurological deficits.

Furthermore, nothing in the relevant regulations requires a supportive medical opinion. As noted above, the regulations pertaining to RFC state that an ALJ, not a medical source, assesses RFC based on the record at large. 20 C.F.R. § 404.1545(a). The Social Security Ruling ("SSR") pertaining to RFC likewise lists eleven types of evidence the ALJ must consider, without prioritizing medical opinions. *See* SSR 96-8p. Moreover, the regulations pertaining to evaluating medical opinion evidence do not require the ALJ to find any medical opinion fully persuasive. On the contrary, they explicitly state that the ALJ will not defer or give controlling weight to any medical opinion. *See* 20 C.F.R. § 404.1520c(a). Likewise, the regulations provide that an ALJ is qualified to independently evaluate non-opinion medical evidence. *See* 20 § C.F.R. 404.1545(a) (directing the ALJ to assess RFC "based on all the relevant evidence in your case record," including "medical evidence."); SSR 96-8p (explicitly states that the evidence ALJs must consider in assessing RFC includes "medical signs and laboratory findings."); 20 C.F.R. § 401.1520c(c)(1)

(directing the ALJ to evaluate the extent to which the source has presented relevant objective medical evidence").

With respect to Dr. Lawrence's opinion, Plaintiff overlooks that Dr. Lawrence's opinion would have supported an even greater level of functioning than the ALJ found. Tr. 64-65. Although the ALJ found that the medical evidence showed that Plaintiff was more restricted than Dr. Lawrence assessed, the record was not devoid of "[any] useful assessment of [Plaintiff's] functional abilities" as Plaintiff claims. *See* ECF No. 10-1 at 14-15. Furthermore, the ALJ was entitled to rely on Dr. Lawrence's opinion, even if he found greater limitations than Dr. Lawrence assessed.

In addition, the ALJ's decision reflects that he considered a variety of other evidence showing that Plaintiff's allegations of very serious physical and mental limitations were not supported by the record, including all the modest physical examinations mentioned above. Tr. 26-28, 295, 445, 604-05, 643-44, 663, 697-701, 732-33, 782, 804, 837, 847, 892, 911-12, 928-29, 973-74. For example, the ALJ noted that despite Plaintiff's reports that he was largely confined to bed and incapable of activity, he maintained normal strength in the lower extremities despite his reported pain and inactivity, suggesting that he was capable of, and engaging in, at least some walking and ambulatory activity during the relevant period. Tr. 28. The ALJ also noted that Plaintiff exhibited no deficits affecting his upper extremities, and therefore, should have been capable of some minimal lifting/carrying. *Id*.

Plaintiff also reported to consultative psychiatric examiner Janine Ippolito, Psy.D. ("Dr. Ippolito"), that he was capable of cooking, showering, and dressing independently, as well as driving. Tr. 28, 437. The ALJ also noted the "significant inconsistencies" during Plaintiff's

examination by Dr. Moreland in April 2019, as discussed above. Tr. 28, 517-18. Based on all the foregoing, the Court finds that the ALJ's RFC finding was supported by substantial evidence.

As detailed above, substantial evidence in the record supports the ALJ's RFC finding. When "there is substantial evidence to support either position, the determination is one to be made by the fact-finder." *Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. Feb. 15, 2001) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)). While Plaintiff may disagree with the ALJ's conclusion, Plaintiff's burden was to show that no reasonable mind could have agreed with the ALJ's conclusions, which he has failed to do. The substantial evidence standard is "a very deferential standard of review – even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise." *Brault*, 683 F.3d at 448 (emphasis in the original). As the Supreme Court explained in *Biestek v. Berryhill*, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

For all the reasons discussed above, the Court finds that the ALJ properly considered entire record, including the medical opinions the and the treatment reports showing improvement after surgery and pain controlled with medication, and the ALJ's findings are supported by substantial evidence. Accordingly, the Court finds no error.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 10) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 12) is **GRANTED**. Plaintiff's

Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

    **IT IS SO ORDERED**.

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE